UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 KENNETH ROGERS,

                    Petitioner,              **MEMORANDUM & ORDER**
                                               19-CV-0166(EK)

          -against-

 LYNN J. LILLEY, Superintendent of
 Woodbourne Correctional Facility,

                    Respondent.

-------------------------------------x

ERIC KOMITEE, United States District Judge:

          Kenneth Rogers, proceeding *pro se*, petitions the Court

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Rogers challenges his 2015 conviction in the Supreme Court of

the State of New York, Queens County on charges of burglary in

the second degree, possession of burglar's tools, petit larceny,

and criminal possession of stolen property in the fifth degree.

          The charges arose out of the burglary of an apartment

building in Maspeth.  A retired police officer who lived across

the street observed Rogers emerging from the building carrying

the stolen items at issue and detained him until NYPD officers

arrived.  After the jury convicted Rogers, the trial judge found

that he qualified as a "persistent violent felony offender"

under New York law.  The judge sentenced Rogers to eighteen

years to life on the burglary conviction and one year, to run

concurrently, for each remaining count.

Rogers raises three arguments in his petition.  *First*, he contends that the state presented insufficient evidence to prove his guilt beyond a reasonable doubt.  *Second*, he contends that he received constitutionally ineffective representation.  *Third*, he contends that the court unlawfully adjudicated him a persistent violent felony offender and that his sentence was excessive.  *See* Pet., ECF No. 1.  For the reasons that follow, Rogers' application is denied.

## I.   Background

### A.   The State's Case

The prosecution relied on eyewitness testimony from the retired police officer, Marion Papka, and testimony from police officers and residents of the burglarized premises.

### 1.   Papka's Testimony

Papka testified that on April 30, 2004, he was gardening in front of his house.  Papka 564:20.  He noticed a male (later identified as Rogers) about 150 feet away, pushing a bicycle up the street toward him.  Papka 565:9-566:15, 619:13-15.  Papka observed Rogers "enter the walkway" of the building across the street from Papka's house.  Rogers was empty-handed at the time, according to Papka, and acting furtively: he "turn[ed] his head to the left and to the right and backwards again" before proceeding up the building steps.  Papka 579:25-580:3, 581:7-9.

2

When Rogers entered the building, Papka went to see "what's up."  Papka 583:1-3.  He heard "loud noises" from inside the building.  Papka 585:13-14.  Rogers emerged from the building holding what looked like a green laundry bag.  Papka 585:14-25.  Papka asked Rogers who he was looking for; Rogers replied "Carlos."  Papka 586:8-13.  Papka asked Rogers what was in the bag; Rogers replied "some money and a drill."  Papka 587:3.  Papka looked in the bag and saw a drill and a water bottle containing "paper money" and "empty change."  Papka 587:511.  Papka wanted to stop Rogers from fleeing the scene, so he pulled out his retired police shield and told him "[l]isten, you don't want no more trouble."  Papka 590:17-20.  Rogers objected: "You can't stop me."  Papka 590:24.  Rogers then gave Papka a "good push," causing Papka to lose his balance.  Papka 591:2-3.  Rogers started to run away, but Papka grabbed his shirt, and they both fell to the ground.  Papka 591:18-22.  They "tussled," and Papka ended up on top of Rogers.  Papka 592:13-17.  While "straddl[ing]" Rogers, Papka called the police.  Papka 592:23-24.

A few minutes later, officers arrived.  Papka 593:2-4.  Papka gave a statement.  He then "went with [an] officer into the building" and up to the second floor.  Papka 593:9-10, 595:3-4.  Papka stated that the door to an apartment there "appeared to be kicked in.  The frame was cracked and it looked

3

like there was a smudge mark on the outside of the door of a
shoe or something like that."  Papka 595:9-11.  The apartment
was "ransacked."  Papka 596:3.  Upon exiting the building, he
saw police officers "searching the defendant and I seen him
remove from the defendant pieces of jewelry and I think there
was a watch, a ring, couple rings, some jewelry and some cards,
some other stuff."  Papka 597:1-4.

2.    Police Officers' Testimony

Several officers responded to Papka's 911 call.  Separ
702:6-8.  Officer Separ observed Rogers sitting on the ground,
with Papka standing above him.  He spoke with Papka before
arresting and searching Rogers; he found a screwdriver, four
rings, and a watch on Rogers' person.  Separ 693:25, 694:14-16,
703:18-25.  Separ also noticed that a green laundry bag was
lying about ten feet from Rogers; he opened the bag and found
money and a drill inside.  Separ 695:9-14.  Separ also
testified — importantly, in Rogers' view — that Papka told him
that Rogers had "forcibly open[ed] the front door" of the
building.  Separ 705:23-25.

Sergeant Kraft, who arrived later, prepared the arrest
report.  Kraft 746:7-12, 760:4-5.

3.    Tenants' Testimony

The tenants of the burglarized apartment, Brian
Collins and Jason O'Grady, returned shortly after the officers

4

arrived.  They had left for work that morning, locking the door
to their apartment on their way out.  Collins 672:12-14; O'Grady
728:2-3.  Collins testified that the street-level door to their
building was normally unlocked at the time of the burglary.
Collins 672:3-11.  O'Grady testified that the apartment had been
"tossed around."  O'Grady 723:14-16.  Collins kept cash in a
water bottle in the apartment; that bottle had gone missing, as
had his watch and "some rings."  Collins 674:5-675:24.  O'Grady
was missing a drill and a laundry bag.  Collins: 674:24-675:1;
O'Grady 723:14.

**B.    The Defense Case**

Rogers testified on his own behalf.  In his version of
events, he observed a burglary in progress; when the burglar
noticed Rogers, he dropped the stolen items he was holding and
ran away.  Rogers had simply picked them up and was left holding
the proverbial bag when he was arrested.

Rogers recounted the events of the day as follows.  He
borrowed a friend's bicycle.  Rogers 813:1.  The bicycle
suffered a flat tire, so he pushed it home.  Rogers 814:7-13.
He was also carrying a screwdriver, glue, and some patches.
Rogers 826:16-20.  On his walk home, he noticed the subject
building because someone he carpooled with at his previous job
lived there.  Rogers 848:19-22.  As he was passing the building,
he heard a "commotion" coming from inside.  Rogers 848:19-22.

5

Rogers testified that he saw a man standing in the doorway with something in his hand.  They locked eyes; the man dropped what was in his hand and ran away.  Rogers 816:15-24.  Rogers approached the house and noticed two bags.  Rogers 818:11-20. He picked one up and saw "a watch and a couple of rings" inside, which he held onto.  Rogers 818:19-20, 821:8-15.  Seeing that the front door to the house was open, he entered the house. Rogers 819:5-14.  He knocked on two doors, but no one responded, so he left.  Rogers 820:1-11.

As Rogers exited the house, Papka approached him. Rogers asked Papka if he lived there; Papka said he did not. Rogers 821:1-4.  Rogers testified that he showed Papka the watch and rings, explaining: "I think somebody just broke in here . . . .  If you gotta phone[,] call the cops."  Rogers 821:4-7.  Papka took out a phone to call the police, but when Rogers turned away and began walking back to the house, Papka tackled him.  Rogers 822:19-21.  Rogers smelled alcohol on Papka's breath.  Rogers 822:22.  According to Rogers, another individual came over to ask what was going on, but left before police arrived.  Rogers 823:10-13.

Following a trial, the jury found Rogers guilty on all counts.  Tr. 970:3-16.

## II.  Procedural History

Rogers appealed his conviction, raising three claims before the Appellate Division.  First, he claimed that the state failed to prove his guilt beyond a reasonable doubt.  Second, he asserted that the prosecutor engaged in misconduct during cross-examination and summation, and that he was denied effective assistance of counsel because his attorney failed to preserve the issue of prosecutorial misconduct for appellate review.  Third, Rogers asserted that the persistent violent felony offender finding violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that his sentence was excessive.

The Second Department affirmed the conviction on all counts.  *People v. Rogers*, 77 N.Y.S.3d 431 (App. Div. 2018).  The court held that the evidence "was legally sufficient to establish [Rogers'] guilt."  *Id.* at 433.  The court determined that Rogers' claim regarding the prosecutor's alleged misconduct was unpreserved for appellate review.  *Id.*  The court also concluded, in the alternative, that the challenged remarks were either "fair" or "harmless."  *Id.*  Moreover, the court added that Rogers' ineffective-assistance and sentencing-related claims were each "without merit."  *Id.* at 1015.

The New York Court of Appeals denied Rogers' application for leave to appeal.  *People v. Rogers*, 109 N.E.3d

1167 (N.Y. 2018) (unpublished table decision).  Rogers then filed this instant lawsuit.

### III.   Legal Analysis

**A.   Standards of Review**

A federal district court has jurisdiction to entertain an application for a writ of habeas corpus from a person asserting that he is in custody pursuant to a state court judgment rendered in violation of the U.S. Constitution or federal law.  28 U.S.C. § 2254.

Because the state courts adjudicated each of the claims Rogers raises in his petition on the merits, deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is appropriate.  *Id.* § 2254(d); see *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009).  Under AEDPA, the district court may issue the writ only if the state court's "adjudication of the claim" either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court's decision is "contrary to" Supreme Court precedent "if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court's result. *Bell v. Cone,* 543 U.S. 447, 452-53 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court's decision "involved an unreasonable application of" Supreme Court precedent if there is "no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## B. Exhaustion

A habeas petitioner must exhaust his available remedies in state court before presenting the claim to the district court. *Id.* § 2254(b)(1). To exhaust a federal claim, a petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). In New York, this means the Petitioner must have raised the issues in question on direct appeal to the Appellate Division of the

9

Supreme Court and again in seeking leave to appeal from the New York Court of Appeals. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).[1]

With these standards in mind, I turn now to Rogers' various claims.

## C.   Sufficiency of the Evidence

Rogers argues that the evidence at trial was insufficient because of certain alleged inconsistencies in the testimony of the state's witnesses.  Although he does not invoke any constitutional right by name, I construe this claim as arising under Due Process Clause of the Fourteenth Amendment (as Rogers did on direct appeal).  Rogers exhausted the claim by raising the sufficiency / due-process question on direct appeal to the Appellate Division and in his subsequent application for leave to appeal in the New York Court of Appeals.  *See* Appellate Brs. 28, 132, ECF No. 8.  I therefore turn to the merits of his claim.

The Due Process Clause of the U.S. Constitution prohibits conviction "except upon proof beyond a reasonable

---

[1] Once the prisoner has fairly presented his federal claims to each level of state court on direct review, he is not required to seek state collateral review — *even if* state postconviction procedures would permit reconsideration (as New York does via a motion to vacate a conviction).  *See Castille v. Peoples*, 489 U.S. 346, 350-51 (1989) (Section 2254's exhaustion requirement does not require state collateral attack, provided federal claims have been fairly presented at every level of direct review); *United States ex rel. Cardaio v. Casscles*, 446 F.2d 632, 634 (2d Cir. 1974) (not necessary to seek a writ of error *coram nobis* to exhaust claim); *see also* N.Y. Crim. Proc. Law § 440.10 (New York provision for motion to vacate a criminal conviction).

doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Consequently, a state prisoner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted). This inquiry "is a mixed question of law and fact, and therefore analyzed under § 2254(d)(1), not § 2254(d)(2)." *Torres v. Greene*, 290 F. Supp. 2d 396, 400 n.3 (S.D.N.Y. 2003). Reviewing courts "defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." *United States v. Bala*, 236 F.3d 87, 93-94 (2d Cir. 2000). When reviewing a conviction for sufficiency of the evidence, "federal courts must look to state law for 'the substantive elements of the criminal offense.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 324 n.16).

Rogers predicates his insufficient-evidence argument on the following alleged inconsistencies:

- Papka testified that he was in the garden in front of his house when he saw Rogers approach and enter the subject building, Papka 564:20-566:15, whereas Officer Kraft wrote in the arrest report that Papka made his observations through the window of his house. Kraft 768:22-769:1.

- Papka described the suspect as having hair, Papka 565:19-23, even though Rogers was bald (with only

11

some hair on the sides of his head) and was wearing a baseball cap at the time.  Rogers 815:12-16, 838:3-13.

- ■ According to Officer Separ's trial testimony, Papka told the police at the scene that Rogers opened the front door of the building by force, Separ 705:23-25, but Papka testified at trial that the front door was unlocked.  Papka 629:23-630:1.

- ■ Papka testified that he entered the burglarized apartment with the police, Papka 593:9-10, 595:3-4, but Sergeant Kraft testified that Papka did not accompany them.  Kraft 75:21-24.

Rogers contends that these inconsistencies cast significant doubt on Papka's reliability.  Given that the state's case depended heavily on Papka's testimony, as the sole eyewitness, Rogers claims that the verdict was therefore not supported by sufficient evidence.

The Appellate Division concluded that the evidence "was legally sufficient to establish [Rogers'] guilt" for each crime of conviction.  *Rogers*, 77 N.Y.S.2d at 433.  It "review[ed] the record" and was "satisfied that the verdict of guilt was not against the weight of the evidence."  *Id.*  It also "accord[ed] great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor."  *Id.* This conclusion did not reflect an unreasonable application of clearly established Supreme Court precedent because the jurors could rationally have concluded, based on the evidence at trial,

that Rogers was guilty of the offenses of which he was
convicted.

The inconsistencies that Rogers invokes do not
establish that his conviction violated the Due Process Clause.
Generally speaking, "assessments of . . . the credibility of
witnesses [are] for the jury and not grounds for reversal on
appeal." *Munn v. Hotchkiss Sch.*, 795 F.3d 324, 330 (2d Cir.
2015) (quoting *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.
1996)).  Indeed, where juries choose to believe witnesses'
testimony "despite any inconsistencies," courts "defer" to those
assessments.  *United States v. Vasquez*, 267 F.3d 79, 91 (2d Cir.
2001); *see also Jackson*, 443 U.S. at 326 ("[A] federal habeas
corpus court faced with a record of historical facts that
supports conflicting inferences must presume — even if it does
not affirmatively appear in the record — that the trier of fact
resolved any such conflicts in favor of the prosecution, and
must defer to that resolution.").  Petitioner points to no
Supreme Court case holding clearly to the contrary.
Accordingly, the Appellate Division's conclusion was not
"contrary to" or "an unreasonable application of" federal law.

Indeed, the alleged inconsistencies that Rogers
marshals are fairly minor.  At least one might not have been an
inconsistency at all: Rogers did have hair, as Papka observed,
even if it did not cover his entire head.  Likewise, the alleged

13

inconsistency regarding forcible entry might be chalked up to confusion on the officer's part about whether Papka was describing Rogers' entry into the building or the apartment. (Papka did testify to having seen indications of forcible entry into the latter. *See* Papka 594:25–596:3.)  These are the types of alleged inconsistencies that are for juries to resolve and are not a basis for habeas relief.  Accordingly, this claim is denied.

**D.    Ineffective Assistance of Counsel**

Rogers next argues that the Appellate Division erroneously denied his Sixth Amendment claim that he was denied the effective assistance of counsel. *Rogers,* 77 N.Y.S.3d at 434 (finding this claim to be "without merit").  Rogers' ineffective assistance claim is predicated on his trial counsel's failure to object to certain alleged prosecutorial misconduct during cross-examination and summation.  This issue, too, is a mixed question of fact and law.  *See United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).

Rogers exhausted this claim; he argued on direct appeal that his conviction should be reversed because "defense counsel was ineffective for failing to object to most of the prosecutor's numerous cross-examination and summation improprieties."  Appellate Brs. 49.  He also sought leave to

appeal to the state Court of Appeals on this ground.  *Id.* at

133.  Again, therefore, I turn to the merits.

Rogers has failed to show that the Appellate Division

unreasonably applied the *Strickland* standard to his trial

attorney's performance.  Under *Strickland v. Washington*, 466

U.S. 668 (1984), a defendant is deprived of his Sixth Amendment

right when (1) counsel's performance "fell below an objective

standard of reasonableness" in light of prevailing professional

norms; and (2) "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 694.  A court may reject an

ineffective assistance claim for failure to satisfy either

prong, without reaching the other.  *See id.* at 697.

On habeas review, the bar is even higher: "The pivotal

question is whether the state court's application of the

*Strickland* standard was unreasonable.  This is different from

asking whether defense counsel's performance fell below

*Strickland*'s standard."  *Harrington*, 562 U.S. at 101.  The

reviewing court "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable

professional assistance."  *Dunham v. Travis*, 313 F.3d 724, 732

(2d Cir. 2002) (quoting *United States v. Aguirre,* 912 F.2d 555,

560 (2d Cir. 1990)).  "[A]s a result of the interaction between

AEDPA and *Strickland*," the relevant question "becomes 'whether

15

there is any reasonable argument that [Rogers'] counsel satisfied *Strickland's* deferential standard," and if so, his claim should be denied. *Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (quoting *Harrington*, 562 U.S. at 105).

Rogers argues that his counsel was constitutionally ineffective for failing to object to certain prosecutorial misconduct on cross-examination and in summation. I analyze each in turn.

### 1. Cross-Examination

Rogers contends that his trial counsel was ineffective for failing to object to the prosecutor's allegedly improper questions on cross-examination. He argues that the prosecutor forced him to testify to the accuracy of the testimony of certain prosecution witnesses, and that trial counsel was deficient for failing to object to that line of questions.

Rogers does not say *here* precisely what cross-examination his counsel should have objected to, and why counsel was ineffective for the omission. On direct appeal, however, he argued that by making Rogers' opinion of the veracity of the prosecution witnesses a dominant theme of the cross-examination, the prosecutor improperly suggested that the defense bore the burden of proving that the witnesses were lying. He cited the following questions:

16

- "[I]t would be accurate to say . . . that when Papka testified in this courtroom and described what you were wearing he got it right, correct?"  Tr. 838:10-12.

- "And when [Papka] described your hair that day, that you had more hair on the sides, he got that right also, correct?"  Tr. 838:14-16.

- "[W]hen the police testified in this courtroom that they removed from you four rings and a watch they were, also, accurate, correct?"  Tr. 857:22-24.

- "[W]hen Detective Separ testified he recovered things from you he was, also, being truthful and accurate, correct?"  Tr. 859:24-25.

Challenging these questions on direct appeal, Rogers relied on *United States v. Richter*, 826 F.2d 206, 208 (2d Cir. 1987).  *Richter* is not a basis for habeas relief, however, because its holding is not "clearly established" precedent at the Supreme Court level.  28 U.S.C. § 2254(d)(1); *Leslie v. Artuz*, 230 F.3d 25, 32 (2d Cir. 2000) ("The phrase 'clearly established Federal law, as determined by the Supreme Court of the United States,' refers only to cases decided by the Supreme Court, as opposed to other courts . . . .").  Moreover, the Second Circuit's *Richter* holding was predicated on a long litany of key facts, not all (or even most) of which were replicated here.

For starters, the *Richter* court's reasoning depended fairly heavily on the fact that the prosecutor asked the defendant whether *law enforcement* witnesses were *lying.*  826

17

F.2d at 208 ("Pointing to the discrepancies between [FBI Special Agent] Lazzara's testimony concerning Richter's statements to him and Richter's testimony on the stand, the prosecutor asked Richter in a series of questions to testify that Lazzara was either mistaken or lying.").  Even so, the Second Circuit said, it "might be inclined to overlook the impropriety [on cross] if that were the defendant's sole claim of error."  The court noted that after cross-examining Richter, the prosecution called another FBI agent in rebuttal "for the purpose of corroborating Lazzara's testimony, which the prosecutor already had forced the defendant to label as false."  *Id.*  Then, in summation, "the prosecutor, by deliberately misquoting Richter's testimony, emphasized the improper nature of the questions he had forced Richter to answer: 'Over and over again, the agents are lying to get me.  That's what Mr. Richter wants you to believe.'"  *Id.* The state emphasized this point, telling the jurors that to find the defendant not guilty, they would have to conclude that two law enforcement officers had lied under oath.  *Id.* at 208-210. The Court of Appeals held that these actions, taken as a whole, had the effect of "compel[ling] [the] defendant to state that law enforcement officers lied in their testimony" and constituted "plain and prejudicial error."  *Id.* at 207-08.

        In the years since 1987, the Second Circuit has distinguished *Richter* on multiple occasions.  Among other

18

things, the court has recognized a "significant difference"
between asking the defendant whether a witness was lying, on the
one hand, and whether the witness was simply mistaken, on the
other. *United States v. Gaind,* 31 F.3d 73, 77 (2d Cir. 1994).
The court also has accorded weight to the distinction that
witnesses whose testimony were at issue were not law enforcement
agents. *Id.* The *Gaind* court observed that "defendants invoking
*Richter* have not succeeded in obtaining reversal of their
convictions when the starkly offensive prosecutorial
delinquencies in *Richter* were not replicated." *Id.*; *see also
United States v. Weiss*, 930 F.2d 185, 195 (2d Cir. 1991)
(finding no *Richter* violation where, *inter alia*, "[w]hile [the
defendant] was questioned as to his recollection of the
testimony of other witnesses, he was not consistently given the
limited option of stating those witnesses were incorrect or
lying about the substance of their testimony").

        Rogers' counsel's failure to object to these and other
similar questions did not constitute constitutionally
ineffective representation. Unlike in *Richter*, the questions at
issue here did not require Rogers to accuse another witness of
lying. On the contrary, the prosecutor here appears to have
carefully phrased his questions differently, asking Rogers to
confirm that the state's witnesses had testified "accurately."
And Rogers does not suggest that the prosecutor deliberately

misquoted his testimony or called a rebuttal witness solely to bolster an already improper line of questioning.  In the end, Rogers cites to no authority — Supreme Court or other — clearly establishing that the prosecutor's questions are per se improper, and neither did his appellate counsel on direct appeal.  Appellate Brs. 133.

Moreover, even if trial counsel erred in failing to object to these questions, Rogers has not shown that he was prejudiced by those errors, as required by *Strickland*.  This is because he has not demonstrated that the questions deprived him a fair trial such that his conviction would have been overturned on appeal.  A criminal conviction should not be overturned "on the basis of a prosecutor's comments standing alone in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (internal quotation marks omitted).  To cause a constitutional violation, a prosecutor's remarks must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974).  No such egregious unfairness occurred here.  Indeed, the court's jury charge, which properly instructed the jury as to the prosecution's burden of proof, ensured that Rogers was not prejudiced by this alleged prosecutorial misconduct.  Tr. 941:7-11 (jury instructions on burden of proof); *see also, e.g.*, *Garofolo v. Coomb,* 804 F.2d

20

201, 206 & n.3 (2d Cir. 1986) (jury instructions relating to attorney summations cured improper prosecutorial remarks).

    2.  <u>Summation</u>

       Next, Rogers contends that his defense counsel was constitutionally ineffective for failing to object during the prosecutor's summation.  He points to instances where the prosecutor allegedly placed on Rogers the burden of explaining why the police officers would lie, vouched for Papka's credibility, denigrated the defense, and improperly appealed to the jurors' emotions.  Here again, however, he has not established that the prosecutor's comments were improper or that his counsel was constitutionally deficient for declining to object.

       a.  Burden Shifting

       First, Rogers contends that his attorney should have objected when the prosecutor suggested that Rogers had to provide reasons for the jury to reject the officers' testimony, thus effectively shifting (according to Rogers) the burden of proof.  He cites the following passage, among others, from summation: "By [Rogers'] own admission he had . . . never had any interaction with any of the officers who testified at this trial and could think of no reason why they would either have a vendetta against him or accuse him of a crime he was innocent of."  Tr. 903:17-22.

This is not burden-shifting; the state's argument merely commented on the officers' lack of a motive to lie.  That kind of commentary has been held "perfectly reasonable." *Everett v. Fischer*, No. 00-CV-6300, 2002 WL 1447487, at *3 (E.D.N.Y. July 3, 2002); *People v. Rodriguez*, 552 N.Y.S.2d 634, 636 (App. Div. 1990) (mem.) (comment that complainant and arresting officer had no motive to lie did not shift burden of proof to defendant).  Defense attorneys must have "wide latitude . . .  in making tactical decisions," *Strickland*, 466 U.S. at 689; that latitude surely encompasses the decision not to interrupt a summation with an objection likely to fail (and perhaps likely to call additional attention to a strong argument for the other side).  *See United States v. Saad*, 512 F. Supp. 3d 297, 310 (D.R.I. 2021) (finding no *Strickland* violation in attorney's "strategic choice" not to object to prosecutor's reference to his client as an "unmitigated liar").[2]

Moreover, any alleged burden-shifting was ameliorated (as above) by the trial judge's instructions to the jury regarding the burden of proof.  And in any event, Rogers was not prejudiced because given that the comments were acceptable,

---

[2] In *Saad*, defense counsel explained that he based the decision to stay silent in part on the recognition that objecting to opposing counsel's arguments "only further calls the jury's attention to them."  *Id.*  That justification could reasonably be deemed to have applied here, as well.  *See also Taylor v. Fischer*, No. 05-CV-3034, 2006 WL 416372, at *5 (S.D.N.Y. Feb. 21, 2006) ("It is a perfectly reasonable choice not to object to *every* possibly improper argument; counsel would surely prefer to seen by the jury to be on the right side of the majority of the objections.").

Rogers' argument, even if preserved for appeal, would not have resulted in his convictions being overturned.

b.   Vouching

Rogers also argues that the prosecutor improperly vouched for Papka's credibility by opining that he was being truthful.  The prosecutor stated that Papka's "testimony in this courtroom after taking an oath to tell the truth was truthful," that he was also "truthful when he spoke to the police" and "when he testified before the grand jury," Tr. 913:22-25, and that Papka had "absolutely no reason to lie."  Tr: 915:13.

Prosecutors generally may not convey their personal view that a witness was telling the truth.  *See Berger v. United States*, 295 U.S. 78, 88 (1935).  "But the government may respond to a defense argument that attacks the credibility of government witnesses."  *Hernandez v. Green*, No. 05-CV-5291, 2007 WL 433396, at *9 (E.D.N.Y. Feb. 8, 2007); *see also United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994) (government may rebut defense testimony impugning integrity of its witnesses).

Defense counsel argued in closing that Papka's testimony was inconsistent and incredible — that he did not have a "clear memory of the events," Tr. 874:22-24, and that he had been "possibly drinking" before witnessing the events in question.  Tr. 876:6-7.  Counsel stated that Papka had "issues" and lied to the district attorney.  Tr. 878:8-11.  In light of

23

these forceful contentions, the prosecutor's assertions in response were permissible.  Once again, Rogers cannot meet the high bar to show (on habeas review) that his trial counsel was constitutionally ineffective.

    c.   Denigrating the Defense

Rogers next contends that his trial counsel was deficient for failing to object to the prosecution's allegedly improper criticism of defense arguments.  For example, the prosecutor opened her summation by stating: "If you don't get distracted by all of the word games that were played during this trial," you would find Rogers guilty.  Tr. 898:15-22.  The phrase "word games" is not especially inflammatory, and Rogers cites no case to clearly establish that this line of argument — relatively common in summations from prosecutors and defense lawyers — would constitute reversible error.  *See generally United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986) ("The government is not barred from using rhetorical devices during the trial.").

    d.   Appeals to the Jurors' Emotions

Rogers next contends that the prosecutor improperly appealed to the jury's sympathies by aligning the jury with the victims of crime as fellow "homeowners" or "renters," and that Rogers' counsel was deficient for failing to object.  The prosecutor referred to the burglarized premises as the place

"where [the tenant-victims] layed [sic] their head down to rest each and every single night [and] where they were supposed to be safe."  Tr 911:3-10.

As a general matter, a prosecutor has wide latitude to use rhetorical devices during closing argument.  *See Biasucci*, 786 F.2d at 513.  The charged crimes here did occur in the alleged victims' home.  Under New York State's caselaw, an objection to this comment might well have been overruled; merely "suggesting that the jury put themselves in a [victim's] shoes" does not constitute an improper appeal to sympathy.  *Rodriguez*, 552 N.Y.S.2d at 636.

In sum, whether Rogers' claimed improprieties on the part of the prosecution are considered separately or together, I cannot say that the Appellate Division unreasonably applied Supreme Court precedent in concluding that trial counsel was not constitutionally ineffective for failing to object at the various points Rogers identifies.  *Waiters v. Lee*, No. 13-CV-3636, 2020 WL 3432638, at *13 (E.D.N.Y. June 23, 2020) (Where "Trial Counsel did not commit reversible error as to any of the challenges raised in the petition, . . . the accumulation of non-errors does not amount to a successful claim.") , *aff'd*, No. 20-2190, 2021 WL 5183539 (2d Cir. Nov. 9, 2021).  Accordingly, the Appellate Division's denial of this claims was neither

contrary to, nor an unreasonable application of, *Strickland*, and this claim is denied.

**E.    Sentencing Claims**

Finally, Rogers argues that his sentencing was improper.  As he did on direct appeal, Rogers asserts that New York's persistent violent felony offender statute, N.Y. Penal Law § 70.08, is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  I construe his instant petition to raise the same argument as he did on direct appeal; that is, that the statute is unconstitutional because "a defendant's status as a persistent violent offender . . . is resolved by the court following the defendant's conviction."  Appellate Brs. 51.  In Rogers' case, the persistent violent felony offender designation meant that Rogers became eligible for a maximum sentence of life imprisonment, while burglary in the second degree normally carries a maximum possible sentence of fifteen years.  *Compare* N.Y. Penal Law § 70.00(2)(c) (maximum term of sentence for a class C felony), *with id.* § 70.08(2) (maximum term of sentence for a persistent violent felony offender).

The Appellate Division determined that this argument was "without merit," *Rogers*, 77 N.Y.S. 3d at 454, and it was: courts in the Second Circuit have "unanimously" determined that the persistent violent felony offender statute is constitutional.  *Hernandez v. Williams*, No. 10-CV-03073, 2013 WL

5405472, at *8 (S.D.N.Y. Sept. 26, 2013) (collecting cases). Thus, the Appellate Division's conclusion was reasonable.

Rogers also argues, as he did on direct appeal, *see* Appellate Brs. 54–56, that his sentence "was unduly harsh and severe" and that a "sentence reduction is warranted" because "he did not employ actual violence in the offense despite being confronted by eyewitness." Pet. at 18. The Appellate Division concluded that "the sentence imposed was not excessive." *Rogers*, 77 N.Y.S.3d at 434. Rogers does not advance any basis for finding a violation of federal law in this conclusion. And in any event, this claim does not raise a cognizable constitutional question, because "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). That requirement is satisfied here. Burglary in the second degree is a Class C felony. N.Y. Penal Law § 140.25. As a persistent violent felony offender, Rogers was subject to an indeterminate sentence with a maximum term of life imprisonment and a minimum term of between 16 years and 25 years. *Id.* § 70.08. Rogers' actual sentence of 18 years to life did not exceed these bounds, and thus he has shown no constitutional violation.[3]

---

[3] I also note that on direct appeal, Rogers did not frame this argument as based on federal law. *See* Appellate Brs. 54–56. Accordingly, he may not

### IV.   Conclusion

For the foregoing reasons, the petition is denied.  No certificate of appealability shall issue because Rogers has not made a substantial showing that he was deprived of any constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  The Court certifies that any appeal of this order would not be taken in good faith, and thus *in forma pauperis* status is denied for the purposes of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

_/s/ Eric Komitee_
ERIC KOMITEE
United States District Judge

Dated:   March 28, 2022
Brooklyn, New York

---

have put the New York state courts on proper notice that he was making a federal constitutional claim (e.g., under the Eighth Amendment), as opposed to a purely state-law claim.  *See generally Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").